**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH DAKOTA**
ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
**PIERRE, SOUTH DAKOTA  57501-2463**

**IRVIN N. HOYT**
**BANKRUPTCY JUDGE**

TELEPHONE (605) 224-0560
FAX (605) 224-9020

May 18, 2005

Steven K. Huff, Esq.
Counsel for Plaintiff
Post Office Box 667
Yankton, South Dakota  57078

John E. Harmelink, Esq.
Counsel for Defendant-Debtor
Post Office Box 18
Yankton, South Dakota  57078

> Subject: *First Dakota National Bank, N.A. v. James J.*
> *Scoblic (In re Scoblic)*, Adv. No. 04-4071;
> Chapter 7, Bankr. No. 04-40923

Dear Counsel:

The matter before the Court is the Motion for Summary Judgment filed by Plaintiff First Dakota National Bank and the response filed by Defendant-Debtor James J. Scoblic. This is a core proceeding under 28 U.S.C. § 157(b)(2). This letter decision and accompanying orders shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. As set forth below, the Motion will be denied.

*Summary.* James J. Scoblic ("Scoblic") was the president and a shareholder of Scoblic Stationers, Inc. ("stationery store"). The stationery store obtained two business loans from First Dakota National Bank ("Bank"), one on July 14, 2003, and the other on October 2, 2003. Scoblic personally guaranteed one or both of these debts.[1] The stationery store also gave the bank a security

---

[1] The present record on these guarantees appears limited. The Court was able to locate only one older guaranty by Scoblic for $15,000.00 that was attached to the Bank's original complaint. At trial, the Bank will need to produce all guarantees by Scoblic that existed on the petition date since they represent Scoblic's (not the stationery store's) debt to the Bank. The Bank will also need to establish the present amount of its unpaid claim against

Re: James J. Scoblic
May 18, 2005
Page 2


interest in several items of collateral, most notably its inventory
and accounts, and the proceeds from all collateral.   Under the
security agreements, the stationery store agreed to hold "in trust"
for the Bank any proceeds from the disposition of collateral and to
"immediately deliver any such proceeds" to the Bank.   Scoblic did
not remit all the collateral proceeds to the Bank and used the
funds for business expenses.    The loans went unpaid.    The
stationery store closed its doors in February 2004.    The Bank
obtained a default judgment against Scoblic and the stationery
store for the unpaid loans on June 1, 2004.

     Scoblic and his wife filed a Chapter 7 petition in bankruptcy
on July 8, 2004.    The Bank commenced this adversary proceeding
against Scoblic seeking a determination that its claim against him
was excepted from discharge under either 11 U.S.C. § 523(a)(4) or
(6).   Under (a)(4), it argued Scoblic was the Bank's fiduciary
because the stationery store had agreed to hold the collateral
proceeds in trust and Scoblic violated this trust by not paying the
proceeds to the Bank.  Alternatively, under (a)(4), the Bank argued
Scoblic had embezzled the collateral proceeds by using them for a
purpose not intended by their agreement.     The Bank also
alternatively argued that under § 523(a)(6), its claim was excepted
from discharge because it arose from the wilful and malicious acts
of Scoblic in not appropriately remitting the collateral proceeds.
Scoblic answered with essentially a general denial.[2]

     The Bank moved for summary judgment on January 27, 2005.[3]  It

_____

Scoblic.

     [2]   One answer was filed by Scoblic's counsel, and Scoblic
filed another *pro se*.

     [3]   The parties do not dispute the applicable law for summary
judgment.

          Summary judgment is appropriate when "there is no
     genuine issue [of] material fact and . . . the moving
     party is entitled to a judgment as a matter of law."
     Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c).  An issue of
     material fact is *genuine* if it has a real basis in the
     record.  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.
     1992)(quotes therein).  A genuine issue of fact is

Re: James J. Scoblic
May 18, 2005
Page 3


argued no facts were in dispute, and it submitted case law in
support of its claims.

In his response, Scoblic stated that the stationery store had

---

*material* if it might affect the outcome of the case. *Id.*
(quotes therein). The matter must be viewed in the light
most favorable to the party opposing the motion.
*F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997);
*Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th
Circ. 1992)(quoting therein *Matsushita Elec. Industrial
Co. v. Zenith Radio*, 475 U.S. 574, 587-88 (1986), and
citations therein). Where motive and intent are at issue,
disposition of the matter by summary judgment may be more
difficult. *Cf. Amerinet*, 972 F.2d at 1490 (citation
omitted).

The movant meets his burden if he shows the record
does not contain a genuine issue of material fact and he
points out that part of the record that bears out his
assertion. *Handeen v. LeMaire*, 112 F.3d 1339, 1346 (8th
Cir. 1997) (quoting therein *City of Mt. Pleasant v.
Associated Electric Coop*, 838 F.2d 268, 273, (8th Cir.
1988). No defense to an insufficient showing is required.
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970)
(citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets his burden, however, the non
movant, to defeat the motion, "must advance specific
facts to create a genuine issue of material fact for
trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v.
Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211
(8th Cir. 1995)). The non movant must do more than show
there is some metaphysical doubt; he must show he will be
able to put on admissible evidence at trial proving his
allegations. *Bell*, 106 F.3d 263 (citing *Kiemele v. Soo
Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT,
Inc. v. TCBY System, Inc.*, 52 F.3d 734, 737 (8th Cir.
1995).

*In re Donald A. Hausle*, Bankr. No. 04-50015, slip op. at 2-3
(Bankr. D.S.D. June 10, 2004).

Re: James J. Scoblic
May 18, 2005
Page 4

done business exclusively with the Bank for 23 years and had
borrowed and repaid funds during that time.  He stated, "The loan
funds were used to pay wages, purchase inventory, and supplies and
to pay for all other business related expenses.  The loans were
paid off or extended depending on [the store's] cash flow."
Scoblic further stated that he had used the July 14, 2003, and
October 2, 2003, loan proceeds in the same manner.  He said he was
never advised by the Bank that the collateral proceeds were to be
placed in a trust account.  Scoblic conceded the loan proceeds had
been dissipated paying business expenses.  He further stated that
after the store closed, the Bank was given all the inventory and
other business property to liquidate against its claim.  Scoblic
cited cases in support of his argument that he was not the Bank's
fiduciary as required by § 523(a)(4) and that he did not obtain the
loans with the intent of causing the Bank harm, which he argued
precluded relief under § 523(a)(6).  In his brief, Scoblic did not
address the Bank's embezzlement argument.

     Scoblic also filed an affidavit in support of his response.
He reviewed his understanding of the stationery store and the
Bank's business relationship and how the loan proceeds were
regularly used, with the Bank's knowledge, to pay accounts,
purchase inventory, pay employees, and pay other general operating
expenses.  He denied that he knew the collateral proceeds were to
be sequestered.  He also stated that he did not draw a "pay check"
from the stationery store during approximately the last three
months it was in business.

     In its reply brief, the Bank noted that Scoblic had failed to
address its embezzlement count under § 523(a)(4).  The Bank also
noted that Scoblic did not refute that he (Scoblic) operated a
competing office supply business out of the same location as the
stationery store.  The Bank restated its arguments and case law in
support of a summary judgment.

     *Discussion - fraud by a fiduciary.*  The applicable law may be
found in *Estate of Robert Lacey v. Jeffry L. Knopf (In re Knopf)*,
Bankr. No. 01-40574, Adv. No. 01-4030, slip op. (Bankr. D.S.D.
March 10, 2002).  For Scoblic to be the Bank's fiduciary,

          the agreement between the parties must include an
          explicit declaration of a trust, identify a trust *res*,
          and set forth the terms of a trust relationship; a mere
          contractual relationship is insufficient. *Werner v.*

Re: James J. Scoblic
May 18, 2005
Page 5

> *Hofmann (In re Hofmann)*, 144 B.R. 459, 463-64 (Bankr.
> D.N.D. 1992), *aff'd*, 5 F.3d 1170 (8th Cir. 1993). The
> fiduciary relationship to which § 523(a)(4) applies does
> not cover trusts imposed on transactions by operation of
> law or as a matter of equity. *ITT Life Insurance Co. v.
> Haakenson (In re Haakenson)*, 159 B.R. 875, 887 (Bankr.
> D.N.D. 1993). A fiduciary under § 523(a)(4) is more
> narrowly defined than it is under the common law. [*E.W.
> Wylie Corp. v. Montgomery (In re Montgomery)*, 236 B.R.
> 914, 922 (Bankr. D.N.D. 1999).] Accordingly, a broad,
> general definition of a fiduciary relationship as one
> arising from confidence, trust, and good faith is not
> applicable under § 523(a)(4). [*Jafarpour v. Shahrokhi
> (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir.
> 2001)](quoting therein *Mills v. Gergely (In re Gergely)*,
> 110 F.3d 1448, 1450 (9th Cir. 1997)).

*Knopf*, slip op. at 6.

Even if the Court were to conclude that the two security
agreements created an express trust of the collateral proceeds,
those documents did not set forth the terms of the trust
relationship or expressly make Scoblic the trustee. Thus, Scoblic
was not serving as the Bank's fiduciary. Consequently, the Bank's
claim may not be excepted from discharge under § 523(a)(4) for
fraud or defalcation by a fiduciary.

*Discussion - debt arising from wilful and malicious act.* The
Bank cited several cases in which the courts concluded a secured
creditor's claim was nondischargeable under § 523(a)(6) where a
corporate officer had converted the secured creditor's collateral.
One of the Bank's citation was from this Circuit, *In re Wheeler*, 96
B.R. 201, 205 (Bankr. W.D. Mo. 1988), but that decision was entered
well before the Supreme Court's pivotal decision in *Kawaauhua v.
Geiger*, 523 U.S. 57, 61 (1998).

For this Circuit, the applicable law is better (and more
recently) discussed in *Johnson v. Logue (In re Logue)*, 294 B.R. 59
(B.A.P. 8th Cir. 2003).

> Pursuant to 11 U.S.C. § 523(a)(6), a discharge does not
> discharge an individual from a debt for willful and
> malicious injury. In this context, the term willful

Re: James J. Scoblic
May 18, 2005
Page 6

means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998); *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989 (8th Cir.1999); [additional cites omitted]. The injury, and not merely the act leading to the injury, must be deliberate or intentional. *Geiger*, 523 U.S. at 61- 62, 118 S.Ct. at 977. Malice requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial harm. *Madsen*, 195 F.3d at 989; [*Fischer v. Scarborough (In re* Scarborough), 171 F.3d 639, 641 (8th Cir. 1999)]; *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996); *Barclays Amer./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir.1985); [additional cite omitted].

In order to except a debt from discharge under 11 U.S.C. § 523(a)(6), the plaintiff must establish by a preponderance of the evidence that the debt arises from an injury which is both willful and malicious. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); [additional cites omitted]....

Malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies. *Long*, 774 F.2d at 881. The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent some additional aggravated circumstances. Conduct which is certain or almost certain to cause financial harm to the creditor is required. While intentional harm may be difficult to establish, the likelihood of harm in an objective sense may be considered in evaluating intent. *Id.*

In the context of the breach of a security agreement, a willful breach is not enough to establish malice. *Phillips*, 882 F.2d at 305; *Long*, 774 F.2d at 882. As the Eighth Circuit Court of Appeals stated:

> Debtors who willfully break security agreements are testing the outer bounds of their right to a fresh start, but unless they

Re: James J. Scoblic
May 18, 2005
Page 7

> act with malice by intending or fully
> expecting to harm the economic interests of
> the creditor, such a breach of contract does
> not, in and of itself, preclude a discharge.

*Long*, 774 F.2d at 882. A debtor's retention of proceeds
of sales of collateral, while clearly a breach of a
security agreement, is not enough to establish malice.
Where a debtor has used the proceeds in an attempt,
albeit unsuccessful one, to keep a business afloat,
malice may not necessarily be inferred from the debtor's
conduct. *Phillips*, 882 F.2d at 305; *Long*, 774 F.2d at
882.

                          . . . .

> The use of some proceeds of another's collateral to
> directly benefit oneself while also benefitting the
> business as a whole is not necessarily enough to render
> the actions malicious. *Phillips*, 882 F.2d at 305; *Long*,
> 774 F.2d at 882. Furthermore, a debtor's inability to
> account for every penny of the proceeds does not
> necessarily equate to malice. ...

*Logue*, 294 B.R. at 62-63; *see Gadtke v. Bren (In re Bren)*, 284 B.R.
681, 696-68 (Bankr. D. Minn. 2002)(statute cannot create express
trust); and *First American Title Insurance Co. v. Lett (In re
Lett)*, 238 B.R. 167, 188-90 (Bankr. W.D. Mo. 1999); *compare United
States v. Foust (In re Foust)*, 52 F.3d 766, 769 (8th Cir.
1995)(government's claim was nondischargeable under § 523(a)(6)
where debtor, who was a director of a farm corporation, sold
substantial secured grain owned by the corporate farm at locations
far from the farm, he deposited the proceeds into a personal
account, and he then participated in false reports that the grain
had been stolen from the corporate farm silo all while payments
were due by the corporate farm to the government).

When considered in the light most favorable to Scoblic,
*F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997), the present
record does not establish that Scoblic knowingly (through
"headstrong" conduct) converted the Bank's collateral or that
Scoblic knew this conversion would certainly or almost certainly
cause financial harm to the Bank. *Foust*, 52 F.3d at 768-69. Thus,
summary judgment is not appropriate. The Bank will have to

Re: James J. Scoblic
May 18, 2005
Page 8


establish these two elements at trial by a preponderance of the evidence.

   *Discussion - embezzlement.* Embezzlement is the fraudulent taking of another person's property by a debtor to whom that property was entrusted. *First National Bank v. Phillips (In re Phillips)*, 882 F.2d 302, 304 (8th Cir. 1989). For a claim to be declared nondischargeable for embezzlement under § 523(a)(4), the creditor must establish that the debtor improperly used its property before complying with some obligation to the creditor. *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir. 1993)(cite therein). Implicit in an embezzlement claim under this Code section is a showing that the debtor acted with malevolent intent. *Neff v. Knodle (In re Knodle)*, 187 B.R. 660, 664 (Bankr. D.N.D. 1995).

   Scoblic failed to address embezzlement in his responsive brief. However, since one element is intent and since intent is not clear from this record, a summary determination of embezzlement is not appropriate. *United States v. One 1989 Jeep Wagoneer*, 976 F.2d 1172, 1176 (8th Cir. 1992)(where intent is at issue, summary judgment must be granted with caution).

   An order will be entered denying the Bank's summary judgment motion. By separate order, the Court will schedule a final pretrial conference during which a trial date will be set. At the trial, the Court will receive evidence on whether Scoblic's actions that resulted in the Bank's claim were wilful and malicious under § 523(a)(6) and whether Scoblic embezzled the proceeds of the Bank's collateral so as to render the debt nondischargeable under § 523(a)(4).

                                   Sincerely,


                                   Irvin N. Hoyt
                                   Bankruptcy Judge

INH:sh

CC:  adversary file (docket original; serve parties in interest)

I hereby certify that a copy of this document was electronically transmitted, mailed, hand delivered or faxed this date to the parties on the attached service list.

**MAY 18 2005**

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court, District of South Dakota
By_____

NOTICE OF ENTRY
Under F.R.Bankr.P. 9022(a)
Entered

**MAY 18 2005**

Charles L. Nail, Jr., Clerk
U.S. Bankruptcy Court
District of South Dakota

John E. Harmelink
PO Box 18
Yankton, SD 57078


Steven K. Huff
PO Box 667
Yankton, SD 57078


Lee Ann Pierce
Trustee
PO Box 524
Brookings, SD 57006


James J. Scoblic
3619 Ralph Rogers Road #102
Sioux Falls, SD 57108